## MURRAY v. HUMPHREY.

### No. 5470.

Court of Civil Appeals of Texas. Texarkana.

Aug. 4, 1939.

Rehearing Denied Sept. 28, 1939.

Wynne & Wynne and William A. Wade, all of Longview, for appellant.

Grisham & Grisham, of Tyler, for appellee.

WILLIAMS, Justice.

Fred Humphrey, appellee, sued C. H. Murray as a surety on an alleged supersedeas bond theretofore executed and filed by Russell W. Weaver as principal with appellant and one J. B. Apperson as sureties in an appeal from a judgment entered in a suit styled J. B. Apperson v. Russell W. Weaver et al., No. 6124–A, then pending in the District Court of Smith County. The latter mentioned suit for brevity will be referred to as the Apperson suit. Weaver and Apperson, above mentioned, were not sued in that both at the institution of the present suit were non-residents and notoriously insolvent.

The appeal in the Apperson suit, perfected only by Weaver, was from a decree entered on October 12, 1935, in vacation, wherein the trial court overruled various pleadings and motions, including that of Weaver, to vacate the orders of that court directing the receiver to sell the property involved and the order confirming the receiver's sale into J. R. Tolbert; and wherein the court denied Weaver, Apperson and intervenors a recovery of any interest in the property and taxed all costs against them. In this same decree as therein worded, the court "dissolved and vacated

a temporary injunction as against Fred Humphrey, defendant, the Kil-Tex Reclamation Plant, Inc., and J. R. Tolbert theretofore entered on the 21st day of September, 1925." Further, the decree enjoined the plaintiff, all defendants and intervenors from in any manner interfering with said Tolbert in his free, adverse and exclusive occupancy and use of the properties. The foregoing decree and judgment was affirmed by the Eastland Court of Civil Appeals. The opinion reported in Weaver v. Humphrey, 95 S.W.2d 720, gives briefly the details of the Apperson suit out of which arose the bond in controversy. The record in the instant cause discloses substantially the same history. The present suit was filed in Smith County and on plea of privilege removed to the District Court of Gregg County.

The cause was tried to the court who has filed findings of fact and conclusions of law. The court found that Humphrey had purchased the property involved in the Apperson suit (being the same property here involved) from Tolbert, the receiver, prior to October 12, 1935; that the cause of action asserted by plaintiff (Humphrey) is one for damages to the property belonging to plaintiff and retained in the possession of Weaver during the pendency of the appeal by Weaver (a defendant in the Apperson suit) wherein he had executed and filed a supersedeas bond, perfecting his appeal to the Court of Civil Appeals, upon which Murray, appellant herein, was and is a surety and liable to plaintiff in the amount of such damages sustained by plaintiff during the pendency of the appeal; that at the time of filing the bond in question Weaver took possession of 6,334.58 barrels of crude oil at $1.00 per barrel and when same was returned to Humphrey when the Apperson suit was affirmed by the Court of Civil Appeals there was a shortage in the amount of oil, the oil actually delivered back being $1,682.87 less in value; and likewise a dwelling house retained by Weaver had depreciated and been damaged $250 in value during the same period. Judgment was entered in favor of appellee against C. H. Murray in the sum of $1,932.87.

Various propositions under which appellant levels the principal attack upon this judgment are embraced in the statement taken from appellant's brief, reading: "We assert there was and is no legal liability on C. H. Murray as a surety on the bond for anything other than costs of court, and when read in the light of the judgment appealed from and the order fixing the amount of the bond is but a cost bond on appeal and is not a supersedeas bond, for the reason that it appears from the face of the proceedings that the order of October 12 is but an order refusing to vacate a receivership and refusing to set aside an order confirming a receiver's sale, and an order dissolving a temporary restraining order and refusing a temporary injunction."

And in this connection appellant relies upon Blankenship v. Little Motor Kar Co., Tex.Civ.App., 224 S.W. 210. And asserts that the court's refusal to set aside and vacate the order of sale and the order confirming the sale was in its nature a negative one. That its effect was not to disturb in any way the existing relations of the respective parties to the property, and left the parties where they previously were undisturbed by the order. That no liability could accrue against a surety on the bond under such circumstances even if the receiver should have mistaken his rights and surrendered the possession to Weaver on account of such bond. And further, that "the surety could not be liable on account of the order dissolving the temporary injunction (or temporary restraining order, it not being clear which it was), in that Article 4662, R.C.S. of 1925, provides that upon the dissolution of a temporary injunction the same shall not remain in force pending an appeal unless the trial court enters an order keeping it in force; so the bond here sued on did not have the effect of keeping in force the temporary injunction,—whatever it was." We pretermit a discussion of the applicability of the doctrine discussed in Blankenship v. Little Motor Kar Co., supra, to the facts here. In passing, though, it is to be noted that Weaver had not sought to vacate the receivership and the order did not contain a refusal to vacate same.

The portions of the judgment of October 12th pertinent to the question whether a temporary injunction was there dissolved reads:

"Came on to be heard * * * and the motion of the defendants Fred Humphrey and Kil-Tex Reclamation Plant, Inc., to vacate the temporary injunction heretofore issued by this court on the 21st day of September 1935. * * *

" * * * and that the law is also with the said defendant Fred Humphrey and Kil-Tex Reclamation Plant, Inc., upon its

motion to dissolve, vacate and set aside the temporary injunction heretofore granted by this court on the 21st day of September A. D. 1935."

The judgment then decrees that this temporary writ of injunction be in all things vacated, set aside and dissolved at costs of Weaver. The motion, petition or application upon which the court granted a temporary injunction and the terms of said writ of September 21, 1935, do not appear in the record. Weaver's first amended original motion to vacate the receivership sale, etc., was filed not earlier than September 24th or 25th. From the prayer in this first amended original motion it can be concluded that Weaver was in possession of the properties at the time of its filing and of its hearing on October 12th, for in its concluding portion Weaver alleged "that J. R. Tolbert attempted to purchase said property at said attempted sale and is now threatening to dismantle said plant and to dispose of all said property and will do so unless restrained by this court; that he (Weaver) be forthwith granted a temporary restraining order against the said Fred Humphrey and Tolbert, restraining them, and each of them, from interfering in any manner with this defendant in his control of his part of said property and its possession, and restraining them from selling, disposing or removing any of said property until so permitted by the further order of this court." This court refused this further request and dissolved, as recited in the judgment, the temporary writ of injunction issued on September 21, 1935. Such recital appearing in the judgment of a court of competent jurisdiction has not been impeached either in pleadings or evidence in this record.

■ An injunction in full force when a judgment dissolving it is entered remains in force while the judgment is suspended by an appeal under a supersedeas bond; but it is not suspended pending an appeal therefrom under a cost bond. Lee v. Broocks, 51 Tex.Civ.App. 344, 111 S.W. 778; Williams v. Pouns, 48 Tex. 141.

■ It is apparent that the appeal in the Apperson suit was not from a money judgment. Our statutes do not prescribe the amount of a supersedeas bond in an appeal from such a judgment. And where appellant is entitled to supersede such a judgment pending appeal, it is necessary for the trial court to fix the amount thereof.

Weatherford v. National Life Ins. Co., Tex. Civ.App., 78 S.W.2d 992; Shell Petroleum Corp. v. Grays, 122 Tex. 491, 62 S.W.2d 113; Magnolia Petroleum Co. v. McClendon, 123 Tex. 10, 65 S.W.2d 484.

Prior to the execution and filing of this bond the trial court in response to a motion entered an order in the Apperson suit reading: "On this, the 28th day of October, A. D. 1935, came on to be considered the matter of setting the amount of a supersedeas bond to be required of the defendant, Russell W. Weaver, and the Intervenors, W. L. Williams, Rex Stegall, Chas. French and D. G. Caldwell, in prosecuting an appeal from the former action of this court in overruling the motion of the said defendant and Intervenors to set aside a former Receivers sale to J. R. Tolbert and the appointment of the Receiver, Joe Holley, for certain property involved in this suit, and in appealing from the action of the said court in dissolving the temporary restraining order heretofore granted herein and refusing to grant a temporary injunction herein and the Court having duly considered the matter, is of the opinion that said appeal bond should be set in the amount of $3,000.00; and it is accordingly so ordered and decreed."

Article 2270, R.C.S.1925, provides: "An appellant * * *, desiring to suspend the execution of the judgment may do so by giving a * * * bond to be approved by the clerk, payable to appellee * * * in a sum at least double the amount of the judgment * * *, conditioned that such appellant * * * shall prosecute his appeal * * * with effect; and in case the judgment of the Supreme Court or the Court of Civil Appeals shall be against him, he shall perform its judgment, sentence or decree, and pay all such damages as said court may award against him."

The bond filed by Weaver in perfecting his appeal identifies the above detailed decree so entered in the Apperson suit, and recites that exception was taken and notice of appeal had been given. The obligation assumed in the bond reads: "Now, therefore, we, Russell W. Weaver, as principal, and the other subscribers hereto as sureties, acknowledge ourselves bound to pay said Fred Humphrey and J. R. Tolbert the sum of Three Thousand ($3,000.00) Dollars, conditioned that the said Principal, appellant, shall prosecute said appeal with effect, and in case the judgment of the

Supreme Court or the Court of Civil Appeals shall be against him, he shall perform its judgment, sentence or decree, and pay all damages and costs as said court may award against him."

The clerk of the district court fixed the probable amount of cost of the suit, including appellate courts, at $250, and approved the above bond on November 1, 1935.

From the foregoing details it is to be noted that Weaver executed and filed a bond in the amount set by the trial court to supersede the judgment. It is further observed that all the terms and conditions on this bond comply with the requirements of Article 2270, supra. It is apparent that Weaver intended to supersede the judgment by having the court set the bond. The findings of the trial court that Weaver retained possession of the properties is supported by the evidence had in this trial. The Eastland Court of Civil Appeals on a second hearing of the appeal in the Apperson suit, reported in Weaver v. Humphrey, 114 S.W. 2d 609, refers to the bond in question as a supersedeas bond. And we conclude that this bond is exactly what it purports to be and what Weaver intended it to be when he executed and filed same, that is, a supersedeas bond. This bond superseded at least that part of the judgment which dissolved the temporary injunction and permitted Weaver to remain in and retain possession of the property in controversy.

Appellant asserts it was error for the court to include the oil then in two low 500-barrel tanks as belonging to the receivership estate in his finding that Weaver took 6,334.58 barrels of crude oil upon the filing of the supersedeas bond, because the evidence is that these two tanks and the oil therein belonged to C. H. Murray. The evidence discloses that there were seven storage tanks situated on the plant lease. Also there is evidence that two of the tanks belonged to Murray. These two were also on the lease. Murray did not testify. No one testified that the oil in the two tanks belonged to Murray. Whereas, there is evidence that the oil in all seven tanks belonged to the receivership estate. The cause was tried to the court without a jury. He was the trier of the facts and passed upon this issue against this contention. His findings will not be disturbed.

Appellant challenges the validity of the judgment entered in the Apperson suit. The propositions so urged, without stating

them, have been concluded by the Eastland court.

All other propositions presented have been carefully considered and are respectfully overruled.

The judgment of the trial court is affirmed.