**CITY OF LUBBOCK, Appellant,**

v.

**Roger Q. STUBBS, Appellee.**

No. 6428.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 18, 1954.

Rehearing Denied Jan. 31, 1955.

Vaughn E. Wilson, City Atty. and Clyde A. Mote, Asst. City Atty., Lubbock, for appellant.

Campbell & Brock, Lubbock, for appellee.

NORTHCUTT, Justice.

This was an action brought by the City of Lubbock, as plaintiff, against Roger Q. Stubbs, as defendant, seeking to permanently restrain and enjoin defendant, his agents, heirs, representatives, assigns, lessees, tenants and other persons holding under him from using or permitting the use and occupancy of certain premises and structures in violation of certain ordinances and requiring him, at his own cost and expense, to tear down, remove and vacate from such premises all additions, enlargements, improvements, repairing, construction, water lines, sewer lines and the construction of all other utilities which was commenced and/or completed in violation of such laws provided. Plaintiff pleads the land in question was annexed to the City of Lubbock and complains of defendant violating certain city ordinances namely zoning, building code, subdivision regulations, curb and gutter, plumbing and sewage.

The trial court granted a temporary restraining order restraining and enjoining defendant, operative until and pending the hearing, from construction on or preparing for use and occupancy the premises in question without a building permit or continuing to construct any structures on said premises and from using or occupying or permitting the use and occupancy of such premises as a tourist court and/or trailer court or for rental property of any type or nature, in any structure constructed in violation of the ordinances as provided.

The defendant answered contending that the allegation in plaintiff's petition showed on the face thereof that if the property in question was annexed to the City and automatically placed in "A" zone, such was unreasonable—was a violation of the due process clause of the United States Constitution and the state constitution—that the allegation did not state the character of use made of the property at and prior to the annexation—that there are no pleadings to

support the allegation that the property was lawfully placed in "A" zone—that the zoning of the premises in question in an "A" zone at the time of the alleged annexation and ever since was arbitrary and unreasonable and such caused him injury and damage. The defendant further pleaded that at the time of the alleged annexation, and ever since, his said property was owned, used and improved for business use—that upon the property was his lumber yard, grocery store, planing mill, silo and two room residences which he had constructed, and made several other allegations not necessary to mention here. All matters were continued in force until a final hearing was had. Following final hearing, the court ordered that the plaintiff take nothing by virtue of its action and that any and all relief prayed for by the plaintiff be denied and that all costs of the proceedings was taxed against the plaintiff and any and all temporary injunctions and/or restraining orders theretofore issued by the court in this cause were dissolved and held for naught. From this order plaintiff excepted and gave notice of appeal and perfected this appeal.

The court was requested by the plaintiff to make and file its findings of facts and conclusions of law. The trial court complied with the request and filed its findings of facts and conclusions of law. The court stated the evidence adduced created a doubt as to whether defendant's property was lawfully annexed to the City but the judgment was not based on the fact that said property was not, in fact, annexed.

Among other findings of fact, the court found as follows:

"The Court finds as a fact that defendant's said property was acreage property when it was annexed; that such property consisted of some two acres of land with an outlet on Avenue P to the East and on 36th Street on the South, that there was no street on the North or the West affording outlets from his property; that defendant had actually used and improved said property for business use for many years prior to the alleged annexation; that upon said property was a grocery store, a lumber yard, *plaining* mill, silo and *grainery* and one or more small frame houses built and set on blocks for sale and removal.

"Defendant's home was also located on the property and used and occupied by him in the operation of his business enterprise. He was so using said property at the time of the alleged annexation and had for many years prior thereto; likewise he was so using said property at the time of the temporary injunction and restraining order.

"V

"At the time of the annexation the city zoning ordinance automatically placed said property in an 'A' zone for residence use and improvement only. The City did not rezone or attempt to rezone said property after annexation and would not permit improvements of said property for the business use of which the defendant was making and using his said property at the time; indeed, the evidence established the fact that no permit would or could be issued where any character of improvements could be made other than for residence purposes only, and that no permits would be issued unless the defendant first platted and subdivided his property and caused a street to be dedicated on the North side of his property, known as 35th Street. One of the witnesses for the defendant admitted that no permit to erect a $100,000.00 residence would be or could be granted by the City. Further, the evidence showed that one E. F. Dawkins contracted to purchase a part of said acreage property and erect a dwelling thereon to comply with the building code laws, but the City refused any permit for any character of residence because said premises had not been subdivided and platted with an outlet to the North.

## "VI

"I further find that at and prior to the alleged annexation the defendant's premises were served with *waterby* the City of Lubbock through mains and pipe lines that the City had inspected and not condemned, and that the use said defendant was making of his property was not in any wise injurious to the public health or general welfare of the public in and around the vicinity of his property.

## "VII

"I further find that for more than two years just prior to this suit for injunction against the defendant the City had failed and refused to rezone said property and place the same in any character of business zone for business use; that all of the property adjoining defendant's property was rezoned for business use in zones classified as 'B', 'C', 'D', etc. The only property rezoned for residence purposes only was a small strip of land located to the southeast of defendant's property. The evidence adduced showed a large drive in known as 'Etters Rebel Drive In' on Avenue P within a short distance of defendant's property, and various other businesses in and around said property, and by reason of such facts there could be no general scheme for the defendant's property to be kept in an 'A' zone for residence purposes only.

## "VIII

"At and immediately prior to the institution of this suit the defendant was using his said property as he had been using it before and since the alleged annexation. He had a small three room building suitable for residence use near completion and the same was movable. Defendant reserved the option to remove the same from the premises and to erect other structures and do likewise. If he used and rented such property he would connect the same with the utilities for water, lights

and gas and in no sense would such constitute any fire hazard or in any wise endanger the public health and be contrary to the general welfare of the City and other property owners in the vicinity of said property."

It is admitted there is no material conflict in the evidence. We believe the evidence is sufficient to sustain the findings of facts of the trial court and that such findings are binding on this Court. We, therefore, overrule all of appellant's contentions that such findings are contrary to the evidence and without support in the evidence and against the greater weight and preponderance of the evidence.

The trial court filed its conclusions of law as follows:

"I conclude that the alleged zoning of defendant's property was an arbitrary exercise of the zoning power to restrict its use to residence purposes and for purposes for which said property cannot be reasonably used. The evidence showed beyond a reasonable doubt such condition.

## "II

"I further conclude that defendant's property was actually within a business district and that the evidence so further showed it beyond a reasonable doubt, and that such zoning of his property in an 'A' zone is unreasonable and its application to his property is therefore void when applied to defendant's property in the use he was making thereof.

## "III

"I further conclude that the City's failure and refusal to rezone said property and to permit the use thereof to continue as it was so being used shows no equity in favor of the City for an injunction against the defendant for using and improving his property as he was so using same."

The appellant in its brief predicated its appeal upon twenty-two points of error;

however, we are of the opinion that, if the trial court was correct in its findings that appellee's property was acreage property when it was annexed; that appellee had actually used and improved said property for business use for many years prior to the alleged annexation; that upon said property was a grocery store, a lumber yard, planing mill, silo and granary and one or more small frame houses built and set on blocks for sale or removal; and at and immediately prior to the institution of this suit, the appellee was using his said property as he had been using it before and since the alleged annexation; together with all the other findings of the court, that one point will dispose of all of such assignments.

The inquiry of this Court is directed to the question as to whether or not the ordinances are a reasonable exercise of the said police power. Assuming that the highest and best use of the property in question is industrial or business, as it was used before and after the annexation, can the City change it into residential? The zoning powers of municipalites, of necessity, are limited. It is not within the power of any municipal body to execute into law a rule or classification that is unreasonable, capricious or arbitrary. A city, however, can and in many instances should, make zoning changes when it promotes the general welfare. In each case the problem resolves itself into a weighing of the equities. This Court must therefore carefully examine the facts of each case as it is manifest that the pertinent rules of law must be applied in accordance with the facts of each particular case. Every owner has the right to use his property in his own way and for his own purposes subject only to the restraint necessary to secure the common welfare. This privilege is both a liability and a property right. This right existed before the adoption of the constitution and is guaranteed by that instrument. This right is subject to a valid exercise of the police powers which exercise is valid only when it bears a reasonable relation to the public health, comfort, morals, safety and general welfare. This Court has no right to question legislative policy and it is not a matter of a few individuals' gain or loss, for that cannot stand in the way of public welfare, the latter not being susceptible to being impeded or thwarted by a private loss which is incident to the exercise of the police powers. The presumption of validity obtains in respect to these zoning ordinances and it must be affirmatively and clearly shown that they are unreasonable and confiscatory, as claimed, as they will not be held unreasonable where there is room for a valid difference of opinion on the question. Among the particular facts and circumstances to be taken into consideration, in determining whether a purported exercise of police power is so unreasonable and confiscatory as to constitute an unlawful invasion of private rights are the character of the neighborhood, the zoning classification and use of nearby property, the extent to which property values are diminished by the particular restrictions involved, compared to the hardships imposed on the individual property owner.

It conclusively appears from the evidence in this case, as it was undoubtedly found and held by the trial court, that the property in question was in practically the same condition and used in the same manner it was used prior to the annexation; that the enforcement of the ordinances in question would be highly destructive of value; that very little good would result to the general public or the general welfare of the city by such enforcement; that no gain to the public would result compared to the hardships imposed.

The greater portion of the property immediately surrounding the property in question is used as some kind of business property and is not zoned as residential property as this property in question is zoned.

The Texas Supreme Court, in the case of the City of Corpus Christi v. Allen, 152 Tex. 137, 254 S.W.2d 759, at page 761, stated:

"(1) We held in Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475, that cities can establish zoning dis-

524

.tricts under the police power to safeguard the health, comfort and general welfare of their citzens; that this power, however, is not an arbitrary one, hence our courts must determine whether zoning ordinances constitute a reasonable exercise of that power. See also, Houston & T. C. Ry. Co. v. City of Dallas, 98 Tex. 396, 84 S.W. 648, 70 L.R.A. 850.

"Much the same thought as to reasonableness is expressed in Art. 1011c [Vernon's Ann.Civ.St.], supra, authorizing zoning, in the following provision: '* * * Such regulations (zoning) shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality * * *.'

"(2) With respect to zoning ordinances which attempt a retroactive effect, as petitioner's ordinance does here, it is said: 'As a general rule, the restrictions of a zoning ordinance or regulation may not be made retroactive. Such regulations must relate to the future rather than to existing buildings and uses of land, and ordinarily they may not operate to remove existing buildings and uses not in conformity with the restrictions applicable to the district, at least where such buildings and uses are not nuisances and their removal is not justified as promoting the public health, morals, safety, or welfare.' 62 C.J.S., Municipal Corporations, § 226(6) h, p. 440. And see McQuillin on Municipal Corporations (3rd. Ed.) Vol. 8, Sec. 25.181, quoted by the Court of Civil Appeals [Allen v. City of Corpus Christi, Tex. Civ.App.], 247 S.W.2d [130] at page 132."

To the same effect is City of West University Place v. Ellis, 134 Tex. 222, 134

S.W.2d 1038, by the Commission of Appeals.

We approve the holding of the trial court that the zoning of defendant's property as was done was an arbitrary and unreasonable exercise of the zoning powers. All of appellant's points of error are overruled. Judgment of the trial court is affirmed.